IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHLEEN HODSON ) | |
| ) | Civil Action No.  03 - 0374e |
| Plaintiff, ) | |
| ) | |
| vs. ) | Judge Maurice B. Cohill, Jr. |
| ) | |
| ALPINE MANOR, INC. d/b/a ) | |
| INTEGRATED HEALTH SERVICES ) | |
| OF ERIE AT BAYSIDE ) | |
| ) | |
| Defendant. ) | |

### DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

AND NOW comes Defendant, **ALPINE MANOR, INC. d/b/a/ INTEGRATED HEALTH SERVICES OF ERIE AT BAYSIDE** (hereinafter "IHS"), by and through its attorneys, **MARGOLIS EDELSTEIN, CHARLES H. SAUL, ESQUIRE**, and **LIBERTY J. WEYANDT, ESQUIRE**, and files the within Statement of Material Facts Not in Dispute[1]:

1.  IHS is a skilled nursing facility that believes that its patients should receive the highest quality of patient care. This entails the facility meeting at all times all local, state and federal law and regulations, as well as established Company policies and procedures. To the end, IHS insists that its staff strictly adhere to facility policies. See Affidavit of Sheila Rist, which includes copy of the Employee Handbook and other

---

[1] For purposes of this MSJ only, Defendant will accept, as true, certain testimony of Plaintiff contained herein and in Defendant's Statement of Material Facts Not in Dispute. However, there are material issues of fact created by numerous self-contradictions within Plaintiff's testimony, as well as between her testimony and documents. It is submitted that Plaintiff's self-created material issues of fact cannot form a basis for denial of a Motion for Summary Judgment. See Martini V. Merrell Dow Pharmaceuticals, Inc., 851 F.2d 703, 706 (3d Cir. 1988)

policies, as Exhibit "A.[2]"

2.  Plaintiff, Kathleen Hodson, is a Licensed Practical Nurse. Hodson[3] 7. She became employed at IHS as an LPN on or about May 15, 1997. Hodson 9-10; Affidavit of Sheila Rist. Hodson's job required her to assess patients, pass out medications, perform treatments and document patient charts. Hodson 12. See Hodson's job description, Exhibit "C." LPN's are supervised directly by the Director of Nursing and also can be supervised by the Assistant Director of Nursing and other RN supervisors. Hodson generally worked the 3:00 p.m. to 11:00 p.m. shift. However, when she was on light duty status she also worked the 7:00 a.m. to 3:00 p.m. shift. Hodson 80; Affidavit of Sheila Rist.

**Plaintiff's Work Injury and Light Duty Status**

3.  Hodson suffered a back injury at work on or about March 30, 2001. Hodson 12, 41-42; Affidavit of Sheila Rist. Hodson was initially off work for a short period of time after this incident (about 10 days), and returned to light duty status. She was eventually released to full duty by IHS' doctor about 90 days after the injury. Hodson claimed she had not recovered enough to go back to work full duty and requested a second opinion. Hodson 20. IHS made arrangements for her to see another doctor, who put her back on light duty status. Hodson 20-21. From July 6, 2001 through the end of 2001, she was on light duty status, while periodically taking time off work allegedly because of back pain. Hodson 17-19. During this period of light duty, she generally worked with a 20-30 pound

---

[2] All Exhibits are attached to Defendant's Brief in Support of MSJ.

[3] "Hodson" refers to the deposition transcript of Kathleen Hodson, which was conducted on March 28, 2005. A true and correct copy of the transcript is attached hereto as Exhibit "B."

lifting restriction. Affidavit of Sheila Rist. See Hodson's medical slips, Exhibit "D."

4.  Hodson went on a medical leave of absence for about two months in the beginning of 2002, as her family doctor put her on work restrictions that prevented her from working during this time period. Hodson was not receiving worker's compensation or disability pay at this time. Hodson 37-39. When she returned in late February 2002, she returned to light duty status, with a weight limit of 20 pounds. See doctor's light duty slip, Exhibit "E." Hodson was sent correspondence from Carl Kovski, Administrator at IHS, advising her of the availability of light duty work and setting forth what her job duties would be. Hodson 33; Affidavit of Rist. See correspondence and job description, Exhibit "F."

**Hodson's Employment at IHS and Accommodations**

5.  Based on the recommendations of her doctor. IHS made accommodations for Ms. Hodson, such as having other employees push the medication cart down the hall and helping her open and close drawers and lift heavy equipment. Hodson 64, 76. Sometimes other nurses treated patients for her if she was unable. She was also permitted to go to the physical therapy room and put hot packs on her back and lie down on the therapy mats during breaks. Hodson put this request in writing and Kovski approved it. Hodson 65-67. See Hodson's written request and approval by Kovski, Exhibit "G;" See also, Affidavit of Rist; Affidavit of Kovski, Exhibit "H;" Affidavit of Dave Dinges, Exhibit "I;" Affidavit of Kathy Mannion, Exhibit "J;" and Affidavit of Roger Watkins, Exhibit "K;" and Affidavit of Jennifer Heiser as Exhibit "L." Hodson also stated in her deposition that there were times when she asked to go home early and she was permitted to do so. Hodson 74.

6.  When Hodson returned to work in late February 2002. Hodson 66, 75. The only restriction set forth by her doctor was a 20 pound weight lifting limit. See Exhibit "E."

7.  Hodson made no requests for reasonable accommodations to be able to perform the essential duties of her LPN position that were denied by IHS. IHS did not believe Hodson was disabled in any way, nor did IHS perceive her as being disabled. While she worked at IHS she never claimed to be disabled. She was on light duty status with a twenty pound weight limitation from an injury, and occasionally took time off from work due to alleged pain. See Affidavits of Sheila Rist; Carl Kovski, Dave Dinges, Kathleen Mannion and Roger Watkins.

8.  There were always nurses' aides assigned to every hall, and they were available to assist Hodson. Although she complained she did not want to perform certain tasks, those tasks were within her light duty restrictions. See Affidavits of Sheila Rist; Carl Kovski, Dave Dinges, Kathleen Mannion, Roger Watkins and Jennifer Heiser.

9.  Hodson was reprimanded numerous times for insubordination and/or failure to follow proper policy and procedures. Her personnel file shows she was reprimanded as follows: (1) August 21, 1997, for failure to follow proper policy and procedure in re-capping a lancet, which caused a needle stick to herself; (2) August 22, 1997 for giving the wrong medication to a patient and failing to call physician and document file upon discovery of mistake; (3) December 1, 1997 failure to follow medication administration policy by giving a patient the wrong medication; (4) December 3, 1997 for failure to follow proper documentation procedure; (5) December 29, 1997, for failure to follow physician orders with a patient; (6) December 18, 1998, for failure to meet minimum standards are care of patients; (7) April 2, 1998, for failing to remove an IV from a patient in a timely manner; (8) February 25, 1999 for failing to properly document failure to provide treatment or explain why treatment was not provided; (9) June 6, 2001, verbal warning for improper documentation; (10) November 11, 2001, verbal warning for excessive absenteeism; (11)

January 29, 2002 for failing to properly sign in and out for lunch and breaks; (12) May 14 2002, for failing to properly complete a narcotic count and document file. See documented verbal and written warnings, attached hereto as Exhibit "M;" See also Affidavits of Rist and Dinges. Hodson could have been terminated for several of these infractions. However, IHS counseled Hodson and continued to employ her.

### May 17, 2002 Incident - Ms. Hodson's Separation from IHS

10.    Hodson's last day of work was May 17, 2002. Hodson 10. When Ms. Hodson reported to work on this date, she punched in and looked at the Hall assignments. See punch in card, Exhibit "N." She saw that she was scheduled to work on Northwest Hall. This upset Hodson, because she claimed that Carl Kovski, then Administrator of IHS, previously told her she was only to be assigned Ambassador Hall. Hodson 29- 30. Nurses are assigned to a specific hall, but are relocated if IHS is short staffed Hodson 24. Hodson told the nurse who she was scheduled to relieve on Northwest Hall that she could not take over for her and she went to find Kovski. Kovski was not available, and, therefore, Hodson spoke to Dave Dinges, Director of Nursing and her supervisor. This was witnessed by Kathy Mannion, Assistant Director of Nursing and Sheila Rist, of Human Resources. Hodson 30-31.

11.    Hodson told Dinges she would not work on Northwest Hall. Dinges told her that if she left her shift, she would be abandoning her job. Hodson 33-34. During this conversation with Dinges, Hodson did not discuss what accommodations could have been given to her to work on Northwest Hall, but instead simply refused to work on the hall, claiming she would not do it. Hodson 94. Hodson was aware that there was about the same number of patients on Northwest Hall and Ambassador on that particular day.

Hodson 97. See redacted patient list, Exhibit "O."

12. Dinges asked her why she could not work on Northwest Hall and Hodson claimed she should not be assigned to work on any hall, as that is not light duty. Hodson claims that she heard another nurse state that Northwest Hall "was a bear" and she claims that the hall was very demanding. The medicine cart is organized differently, which required a lot of bending. Hodson 31-33. Hodson requested to work on a different Hall and that request was denied. Hodson 74.

13. Dinges told Hodson that she needed to work on Northwest Hall and if she did not, she would be abandoning her position. Although he urged her to remain and warned of the consequences of refusing the assignment, Hodson disobeyed orders, punched out, and walked off the job at the beginning of her shift. Hodson 35. See Exhibit "N;" Affidavit of Dinges, Rist and Mannion.

14. After Hodson left the facility, she went home and called Ray Martinez, who was the corporate Director of Human Resources. See Martinez's Affidavit as Exhibit "P." Before this call to Martinez, Hodson never called corporate headquarters to file a complaint. Hodson did not complain of any harassment or discrimination during this phone call. See Exhibit "P." Martinez told her she was not terminated, but despite this she never went back to work at IHS. She called Kovski the next day in an attempt to return to work and was told that she walked off the job, abandoned her patients and was thereafter, terminated. Nevertheless, Martinez processed her worker's compensation claim and she began receiving worker's compensation monies. Hodson 36-37; See Affidavit of Ray Martinez.

15. After Hodson walked out, Dinges filled out a disciplinary action form documenting what occurred. See disciplinary action, Exhibit "Q." See Also Affidavits of Dinges and Rist.

**Hodson's Allegations of Religious Discrimination & Harassment**

16. Hodson was open about her religious beliefs. She would openly give credit to God entering her life and claims that employees would come to her asking if she would pray for them. Hodson 47; Affidavit of Rist; Kovski, Dinges, Mannion, Watkins, Maureen McGraw, as Exhibit "R," Carmen Callicott, as Exhibit "S," and Donna Marsili, Exhibit "T."

17. Dinges put a note addressed to her on the bulletin Board that contained comments about her religion. It was folded in half. The note addressed an incident wherein Hodson forgot to put her initials on a treatment record. Dinges allegedly wrote something on the note, such as "What an amazing thing you have performed" or " Did you lay hands on them and heal them?" Hodson 49-51. Hodson claims that she gave the note to Sharon DiLoreto, who was then the Director of Nursing, but according to Hodson, DiLoreto has no recollection of the note. This incident occurred before her alleged work related injury, so it occurred at least 1 year before her last day of employment. Hodson 81. This is the only incident Hodson has to support her claim for religious discrimination. Hodson 49-52, 81.

18. Hodson believes that Watkins made sexual innuendos in front of her because she is a Christian. Hodson 52; 77. Watkins is openly gay. Hodson was heard making derogatory comments while working at the nurses station, calling Watkins a "faggot" and she openly stated her opinion that "God does not approve of homosexuality." See Affidavit of Mannion. She made comments directly to Watkins, such as, "I can't

understand your kind," and "Your people are wrong." She also made a comment that "All his people should be put on an island." When she would make these comments to Watkins, he would roll his eyes and walk away without saying anything back to her. See Affidavit of Watkins.

20. Hodson was repeatedly asked in her deposition if there were any other specific instances to support her claim of religious discrimination or harassment and she could not articulate any other incident. There was nothing concrete that she could point to, she just believed this. Hodson 77-78.

**Hodson's Allegations of "Harassment"**

21. Roger Watkins threw a box of lancets at her, (a box about three by four of five inches long) and said "If that's not too heavy for you, Hodson, could you take here or take it here or give it to." RN Donna Marseli witnessed this and Hodson said to her, "How long do I have to continue to take this treatment?" Ms. Marcelli allegedly shrugged her shoulders and said she did not want to get involved. Besides Marcelli, who is not Hodson's supervisor, she never complained to anyone else about this incident. Hodson 45- 46.

23. Watkins put a lot of medications and files in front of her and asked her to send them back and make a record of them. He threatened to write her up if she did this wrong. Hodson 53; 64. Hodson admits that Watkins never wrote her up for any misconduct. Hodson 64.

24. Watkins would make sexual comments to Carman Callicott, LPN, and Hodson overheard these conversations. Watkins claimed that he could not put Attends (adult diapers) on because they would not fit due to his physical endowments. Watkins also talked about wanting to give patients "flu shots in the butt" because he wanted to see

-8-

the male patients naked. He also made statements about wanting to "do it" with a priest. Hodson 53- 54. Watkins did not make any of these statement directly to her, he just made them in her presence. Hodson 55; 78. Callicott witnessed this conduct and Hodson complained to her about it. Hodson 62.

25. Callicott told Hodson that Watkins pinched her nipples. Hodson did not witness this, but Callicott told her about it. She never complained to anyone about this incident. She only talked about it with Callicott. Hodson 56-57.

26. Hodson was reprimanded by Dinges for not properly signing off on narcotics. Hodson 85-88.

27. Hodson requested to be employed in the MDS position (patient assessment and billing position) that was open. The position was given to Jeanette Brown, who had less seniority. Hodson 68-69.

28. Hodson can not recall whether she ever complained to management about these incidents or not. She claims she told Rist and Kovski about Watkins' behavior towards her, but in her deposition could not confirm specific incidents she complained about. Hodson 55; 58-59. Hodson was asked in her deposition if there were any other incidents of sexual harassment by Watkins and she said "Oh. I can't specifically remember right now, but, I mean, there was a lot more other harassment." When asked again about other incidents of harassment or discrimination, she could not remember anything else. Hodson 83 - 84.

**IHS Grievance Policy**

29. IHS has a grievance policy that is set forth in the employee handbook. See employee handbook attached to Affidavit of Rist, Exhibit "A." IHS has an open door policy for employee complaints. Kovski told Hodson that she could come to him with any complaints she had and Hodson felt she could also make complaints to Rist. Hodson 26-27. Additionally, there was a 1-800 hot line number that employees could call to make complaints and this telephone number was posted around the facility. Hodson 27. Employees could also file complaints with Ray Martinez, Corporate Director of Human Resources, and Hodson was aware of how to contact him. There was a procedure to file a written grievance, but Hodson never did so. Hodson 28-29. Hodson never called the hotline. Hodson 27; See also Affidavits of Martinez, Rist, and Kovski, Callicott, Magraw and Marsili.

30. Employees are trained about issues related to sexual harassment and discrimination and the policy related thereto, and Hodson admittedly attended this training and was aware of how to make a complaint. Hodson 27. See Acknowledgment of IHS handbook and policies signed by Hodson as Exhibit "U."

**Hodson's Status Since Her Separation from IHS**

31. Since Hodson's separation from IHS, she has not taken any action to seek additional employment. Hodson claims she never recovered from her work related injury in May 2001. She claims she can not walk far and has to take frequent rests. She, however, currently does not currently take any pain medication. Hodson 43-44.

31.     Hodson believes she has a disability in walking. She has a herniated disc. She walks with a limp, but she can still walk. She does not use a leg brace, crutch or cane. She does not use a walker or a wheel chair. Hodson 70.

32.     Hodson's family doctor states that she is not able to work at all. Hodson attempted to collect Social Security Disability benefits but her request was denied, as it was determined that Hodson could still work in less physical positions. Hodson 71-73.

Respectfully submitted,

MARGOLIS EDELSTEIN

_____
Charles H. Saul, Esquire
PA I.D. #19938
Liberty J. Weyandt, Esquire
PA I.D. #87654

MARGOLIS EDELSTEIN
1500 Grant Building
310 Grant Street
Pittsburgh, PA  15219
(412) 281-4256

# CERTIFICATE OF SERVICE

I certify that on the 29th day of July, 2005, I served upon Plaintiff via U. S. First Class Mail, a copy of the within Defendant's Statement of Material Facts at the following address:

Kathleen Hodson
2201 Keystone Drive
Erie, PA 16509

_____
Charles H. Saul, Esquire