24.  I never heard Mr. Waktins or Mr. Dinges disparage Ms. Hodson based on her religious beliefs and Ms. Hodson never made any such complaints. She never complained about an incident involving statements allegedly made by Mr. Dinges questioning whether Ms Hodson "laid her hand on patients and healed them" or that he posted a note on the pin-up board that disparaged Ms. Hodson's religion. Ms. Hodson never complained to me that Mr. Watkins threw a box of lancets to her and joked about her physical ability to catch the small box. She never complained that he made statements about wanting to give patients flu shots in their butts, or him joking about how Attends would not fit him because of his physical endowments. She never complained that he talked about wanting "to do it with a priest." I never heard any complaints that Mr. Watkins pinched Ms. Callicott's nipples, nor did Ms. Callicott complain of such misconduct. I never witnessed any of these incidents, and no other employee complained of such conduct. In fact, no other employee made any complaints against Mr. Dinges or Mr. Watkins based on religious discrimination, sexual harassment or any type of discrimination or harassment. These allegations only were made by Ms. Hodson after she quit her position. In fact, I was shocked to hear of these complaints.

I have read and had an opportunity to correct this Affidavit consisting of __7__ pages and I hereby verify under penalty of perjury that the statements contained in this Affidavit are true and correct to the best of my knowledge and belief.

Dated: 07-28-2005                              _____
                                                Sheila Rist

ATTACHMENT 1

no charges were filed against her nursing license for abandoning her patients.

17. Ms. Hodson called me the next day requesting her job back. I told her she quit her position, abruptly walked off the job without finding a replacement and abandoned her patients. According to IHS policy, employees are not eligible for rehire under these circumstances and I told her she would not be hired back. My refusal to permit her to return was solely based upon the abandonment of her job and the patients. My decision was not based in any way upon Ms. Hodson's religious belief, for any discriminatory reasons, for harassment or because she was on light duty status. To my knowledge, Ms. Hodson was not disabled in any way, nor did I perceive her as being disabled. She never claimed to be disabled. She simply was on light duty status from an injury.

I have read and had an opportunity to correct this Affidavit consisting of __6__ pages and I hereby verify under penalty of perjury that the statements contained in this Affidavit are true and correct to the best of my knowledge and belief.

Dated: 7-25-2005

_____
Carl Kovski

she could either work Northwest Hall or quit her position. She decided to quit and she walked out. When she walked off the job, she was in violation of IHS policy as she abandoned her patients without adequate notice or without finding a replacement. As a nurse at IHS, every employee is responsible for every patient in the building.

18. After Ms. Hodson walked out, I filled out a Disciplinary action form documenting what occurred, as explained above. A copy of this disciplinary action form is attached as Exhibit "C." I did not fire Ms. Hodson, she voluntary quit her position when she refused to work on the Northwest Hall and abandoned her patients.

19. Ms. Hodson never complained to me about any sexual harassment or other misconduct by Roger Watkins or any other employee for that matter. I never witnessed Mr. Watkins treating Ms. Hodson improperly.

20. I was never fired from my position at IHS as Ms. Hodson claims. I was suspended for a one week period of time and after investigation, I was asked to return to work as was paid my full salary. I left IHS in the summer of 2003, I was laid off and received a severance package from the company.

I have read and had an opportunity to correct this Affidavit consisting of __8__ pages and I hereby verify under penalty of perjury that the statements contained in this Affidavit are true and correct to the best of my knowledge and belief.

Dated: 7/26/05

_____
Dave Dinges

14. By the time Ms. Hodson reported to work, we were already behind in passing out medications on the Northwest Hall due to being short staffed. Mr. Dinges told Ms. Hodson that she was needed in Northwest Hall, that if she refused to work on the Northwest Hall she was abandoning the patients, and that there was no one else available in that hall. He told her she could either work Northwest Hall or quit her position. She said "then I quit" and she walked out. When she walked off the job, she was in violation of IHS policy as she abandoned her patients without adequate notice or without finding a replacement. As a nurse at IHS, every employee is responsible for every patient in the building. At no time did Ms. Hodson claim that she could not physically perform the work the work at Northwest Hall and at no time did she request any accommodations to work at Northwest Hall. If she had obeyed her supervisor's direct instructions to work at Northwest Hall, she would still have been accommodated by doing only light duty work and the nurses' aides and other employees would have assisted her by performing the heavier work.

I have read and had an opportunity to correct this Affidavit consisting of __5__ pages and I hereby verify under penalty of perjury that the statements contained in this Affidavit are true and correct to the best of my knowledge and belief.

Dated: 7/28/05

Kathleen Mannion

I have read and had an opportunity to correct this Affidavit consisting of __5__ pages and I hereby verify under penalty of perjury that the statements contained in this Affidavit are true and correct to the best of my knowledge and belief.

Dated: 7/28/05

_____
Roger Watkins

7. Ms. Hodson never complained to me about Mr. Watkins. Mr. Watkins was thought to be openly gay. Ms. Hodson had a personal problem with this and clearly she objected to his personal life style.

8. I never heard Mr. Watkins talk about his sexual fantasies or exploits at work. I never heard him talk about his physical attributes. I never heard Mr. Watkins making statements about wanting to give patients flu shots in their butts, or him joking about how Attends would not fit him because of his physical endowments. I never heard him talking about wanting "to do it with a priest." I never heard any complaints that Mr. Watkins pinched Ms. Callicott's nipples, nor did Ms. Callicott complain of such misconduct. I never heard Mr. Watkins or Mr. Dinges disparage Ms. Hodson because of her religious beliefs. Ms. Hodson never complained to me of any of these incidents.

I have read and had an opportunity to correct this Affidavit consisting of 3 pages and I hereby verify under penalty of perjury that the statements contained in this Affidavit are true and correct to the best of my knowledge and belief.

Dated: 7/16/05

_____
Jennifer Heiser

during this conversation did she claim that she was being discriminated against because of her religion or a disability. At no time during this conversation did she claim she was being harassed.

4. Before May 17, 2002, Ms. Hodson never complained that she was being harassed or discriminated in any way by either Dave Dinges or Roger Watkins. She never made any claims of violations under the ADA, religious discrimination, sexual discrimination or harassment or hostile work environment. These allegations only surfaced when Ms. Hodson litigated her worker's comp claim.

5. I was physically present in the facility enough that employees knew they could and should contact me with any problems or complaints. Ms. Hodson was aware of who I was, what my position was and how to contact me directly with any complaints she may have had. She also could have called the 1-800 hotline number and filed a complaint. Any complaints made through the hotline would be forwarded to my attention for investigation. I do not recall ever receiving any complaints from Ms. Hodson through the 1-800 hotline.

I have read and had an opportunity to correct this Affidavit consisting of __2__ pages and I hereby verify under penalty of perjury that the statements contained in this Affidavit are true and correct to the best of my knowledge and belief.

Dated: 7/26/05

_____
Ray Martinez

supervisor or manager, nor have I witnessed any discrimination or harassment against any other employee. No employee has ever complained to me about being harassed or discriminated against.

8. If I ever needed to make a complaint of harassment or discrimination at IHS, I am aware of how to do so. This policy is provided in the employee handbook and during the time Ms. Hodson was employed at IHS, there was a 1-800 number posted around the facility that employees could call to make complaints.

I have read and had an opportunity to correct this Affidavit consisting of 3 pages and I hereby verify under penalty of perjury that the statements contained in this Affidavit are true and correct to the best of my knowledge and belief.

Dated: 7/25/05

_____
Maureen Magraw

3

complained about it. I never made any such complaint against Mr. Watkins because nothing inappropriate ever happened.

9. I do not know why Mr. Hodson is involving me in her allegations against IHS. Frankly, I do not believe any of her assertions. I think she is simply looking for free money.

10. I do not believe IHS has a hostile work environment. Most of the employees at IHS get along and it is a pleasant place to work. I have never experienced any type of discrimination or harassment at IHS by any other employee or any supervisor or manager, nor have I witnessed any discrimination or harassment against any other employee. Besides Ms. Hodson's unjustified accusations, no employee has ever complained to me about being harassed or discriminated against.

11. If I ever needed to make a complaint of harassment or discrimination at IHS, I am aware of how to do so. This policy is provided in the employee handbook and during the time Ms. Hodson was employed at IHS, there was a 1-800 number posted around the facility that employees could call to make complaints.

I have read and had an opportunity to correct this Affidavit consisting of 3 pages and I hereby verify under penalty of perjury that the statements contained in this Affidavit are true and correct to the best of my knowledge and belief.

Dated: 7/25/05

_Carmen Callicott_
Carmen Callicott

nor have I witnessed any discrimination or harassment against any other employee. Besides Ms. Hodson's unjustified accusations, no employee has ever complained to me about being harassed or discriminated against.

10. If I ever needed to make a complaint of harassment or discrimination at IHS, I am aware of how to do so. This policy is provided in the employee handbook and during the time Ms. Hodson was employed at IHS, there was a 1-800 number posted around the facility that employees could call to make complaints.

I have read and had an opportunity to correct this Affidavit consisting of 3 pages and I hereby verify under penalty of perjury that the statements contained in this Affidavit are true and correct to the best of my knowledge and belief.

Dated: 7-26-05

_Donna Marsili_ (signed)
Donna Marsili

nor have I witnessed any discrimination or harassment against any other employee. Besides Ms. Hodson's unjustified accusations, no employee has ever complained to me about being harassed or discriminated against.

10. If I ever needed to make a complaint of harassment or discrimination at IHS, I am aware of how to do so. This policy is provided in the employee handbook and during the time Ms. Hodson was employed at IHS, there was a 1-800 number posted around the facility that employees could call to make complaints.

I have read and had an opportunity to correct this Affidavit consisting of 3 pages and I hereby verify under penalty of perjury that the statements contained in this Affidavit are true and correct to the best of my knowledge and belief.

Dated: 7-26-05

Donna Marsili

3