IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHLEEN HODSON ) | |
| ) | Civil Action No.   03 - 0374e |
| Plaintiff, ) | |
| ) | |
| vs. ) | Judge Maurice B. Cohill, Jr. |
| ) | |
| ALPINE MANOR, INC. d/b/a ) | |
| INTEGRATED HEALTH SERVICES ) | |
| OF ERIE AT BAYSIDE ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY BRIEF
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**A.     Plaintiff's Claims of Religious Discrimination/Harassment**

Defendant argued the following in its Motion for Summary Judgment:

    1.     Hodson's Title VII allegations based on religious discrimination must be dismissed because Plaintiff can not meet her initial burden of establishing a *prima facia* case of discrimination by a preponderance of the evidence.  She can not prove that she suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination.  McDonnell Douglas Corp. V. Green, 411 U.S. 792 (1973); Sarullo v. United States Postal Serv., 352 F.3d 789 (3d Cir 2003).

    2.     Hodson's assertions of religious discrimination stem from the fact that she, Dinges and Watkins did not get along.  Legally sufficient evidence is required to turn an ordinary conflict between two persons into an actionable claim of discrimination.  The few isolated remarks alleged by Hodson, which she believes were

1

directed to her because of her religion, were isolated in nature, remote in time and/or were made in jest. No reasonable person would be offended by the allegations asserted by Hodson. There is no evidence to suggest that any of the alleged religious remarks had anything whatsoever to do with Hodson's termination.

        3. Even if Hodson could establish evidence raising an inference of religious discrimination, Hodson was fired because she refused to perform a work assignment and walked out on her shift. Defendant, therefore, had a legitimate, non-discriminatory business reason to terminate Hodson's position.

        4. Hodson can not establish that the reasons articulated by IHS for her termination were false or a pretext for discrimination. See, Kautz v. Met-Pro Corporation, 2005 U.S. App. LEXIS 11559 (3d Cir. June 17, 2005). Under the analysis set forth in Kautz, Hodson fails to put forth evidence of "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in IHS's proffered legitimate reason for its action that a reasonable fact finder could rationally find them unworthy of credence." Hodson admits in her deposition that she refused the work assignment and walked off the job. Hodson Deposition, pages 35, 94.

        5. Hodson's claims of hostile work environment should also be dismissed because: she has insufficient evidence to prove that she was subjected to a hostile work environment based on her religion; she can not prove that any alleged conduct was severe or pervasive; and a reasonable person of the same protected class would not be detrimentally affected in the performance of his/her job based upon the allegations raised by Hodson.

6. Finally, Hodson's claim that she was not promoted to the MDS position due to her religion must be dismissed because Hodson fails to establish a *prima facia* case for failure to promote, as she can not show that similarly situated individuals from a non-protected class were promoted instead of her.

**Plaintiff's Response**

In her responsive pleading, Plaintiff does not address the legal insufficiencies which Defendant asserted precludes her allegations of religious discrimination and harassment from surviving summary judgment. She does not set forth evidence which shows she can establish a *prima facia* case of religious discrimination or harassment, nor does she attempt to argue that Defendant's proffered business reasons for her termination were pretextual.

Instead, she merely reiterates the same facts, which for the purpose of summary judgment, Defendant has assumed to be true. In paragraph 9 of Hodson's Affidavit, Hodson re-alleges that Dinges wrote a note directed to Hodson and pinned it to a bulletin board which read, " What did you do, lay your hands on them, and heal them?"

In paragraph 10 of Hodson's Affidavit, she also re-claims that Watkins talked about his sexual fantasies, exploits and his genital endowments in front of her. She claims Watkins did this knowing she is a Christian and that he did this deliberately to embarrass and hurt her. She allegedly complained to Carl Kovski on one occasion about Watkins' comments, but she believes no action was taken. She also alleges that Watkins pinched another nurse, Carmen Callicott, on her nipples. Hodson admittedly never complained about this incident.

In paragraph 15 of her Affidavit, Hodson alleges she asked Carl Kovski for the MDS position and that he said he would get back to her. She claims he never responded to her, she was never interviewed for the position and someone else was hired. She does not make clear in her Affidavit whether this supports her claim of religious discrimination, but has alleged so on other occasions.

### Defendant's Reply to Plaintiff's Response

The assertions made in Hodson's response are insufficient to establish a *prima facia* case of religious discrimination or harassment. Indeed, as set forth in Defendant's Statement of Material Facts Not in Dispute, which Hodson has not responded to, Defendant, for the purposes of summary judgment only, has already deemed these facts set forth by Hodson above to be true. *See* Paragraphs 17, 18, 24, 25, 27 of Defendant's Statement of Material Facts Not In Dispute.

Even if all the allegations raised by Hodson with respect to her claims of religious discrimination and harassment did in fact happen, she still can not establish a *prima facia* case of religious discrimination or harassment because: (1) there is no adverse employment action under circumstances giving rise to an inference of unlawful discrimination; (2) there is no causal connection between Hodson's claims of religious discrimination or harassment and her termination; (3) a personality conflict between parties does not equate to discrimination; (4) the one, isolated, note allegedly posted by Dinges is not so severe of pervasive as to create a hostile work environment, nor would a reasonable person be offended by the comment; (5) Watkins statements or actions were admittedly not directed to Hodson, nor is there any evidence these statements were made because of Hodson's religion; (6) Hodson's religion had nothing whatsoever

4

to do with either Hodson's denied promotion or her termination; and (7) the record is absolutely devoid of any evidence that IHS's reason for Hodson's termination or in its decision to hire another employee to the MDS position was pre-textual.

Therefore, Plaintiff's claims of religious discrimination and harassment, and/or hostile work environment should be dismissed.

### B.    Plaintiff's Claims of Discrimination under the ADA

Defendant argued the following in its Motion for Summary Judgment:

1.    Hodson can not establish a *prima facia* case of discrimination under the ADA because she did not have a physical impairment that substantially limits one or more major life activity at the time of the alleged discrimination, as defined under the Act. Toyota Motor Mfg. v. Williams, 534 U.S. 184, 198 (2002). In order for Hodson to prove she is substantially limited in a life activity, she must "be unable to perform a major life activity that the average person in the general population can perform" or be "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(i)(ii) (1993).

IHS cited to three different cases in which persons who had limitations such as Hodson, including being limited in the number of hours they could walk or stand, had limitations in the distance they could walk, walked with a limp, had weight limitations in lifting objects, and were in pain, were not found to be persons substantially limited in a major life activity. See, Taylor v. Pathmark Stores, Inc., 177 F.3d 180 (3d Cir. 1999); Kelly v. Drexel University, 94 F.3f 103 (3d Cir. 1996); and Marinelli v. City of Erie, 216 F.3d 354 (3d Cir. 2000). Only extremely limited impairments qualify for protection

5

under the ADA. Hodson's claims of back pain and a weight lifting restriction of 20 pounds, which allegedly makes it difficult for Hodson to walk has not been held by the courts to be substantially lifting in a major life activity.

Further, the mere inability to perform a single particular job is not enough to establish a limitation with respect to working. An individual who can only perform light duty work, only shows that the individual is disqualified from a narrow range of jobs, and is not disabled under the meaning of the ADA. Colwell v. Suffolk County Police Dept, 158 F.3d 635 (2d Cir 1998).

After Hodson's injury in 2001, she was released to work light duty, for well over a year, with intermittent days off from work, and, therefore, her doctor did not deem her injury to be so limiting such that she could not return to work. Although Hodson treated medically for her injuries, Hodson admits she takes no medication and does not require the use of assistive devices.

Hodson attempts to show the severity of her impairments by claiming her doctor stated that she can not work at all and that she can not perform the job of LPN. (Besides Hodson assertion, there is no evidence of this hearsay). Moreover, in order for Hodson to have a claim under the ADA, she must establish she is a "qualified individual with a disability." 42 U.S.C. § 12112(a); Cleveland v. Policy Management Sys., Corp., 526 U.S. 796 (1999). If Hodson "can not work at all," then she is not a qualified individual with a disability, since she is unable to perform the essential functions of the job, with or without accommodation.[1]

---

[1] Should it be believed by the Court that Hodson has a disability as defined under the act, IHS accommodated her disability.

2. IHS did not know that Hodson was disabled, nor did IHS perceive Hodson to be disabled. Having back pain alone does not automatically establish that an individual has a disability as defined under the act. As far as IHS was aware, Hodon was released to light duty. There is no evidence to prove that IHS perceived Hodson as having a disability, and Hodson has not suggested otherwise. If IHS was unaware that she had a disability, then it could not have fired her due to a disability.

3. Even if Hodson has met her burden of establishing a *prima facia* case of discrimination under the ADA, IHS has articulated a legitimate business reason for Plaintiff's termination. Hodson admits she refused to perform her job assignment and walked out on her shift.

4. Hodson has failed to show by a preponderance of the evidence that Defendant's articulated business reason for Hodson's termination was pre-textual. Defendant permitted Hodson to work on light duty status for well over a year and provided accommodations to her within her restrictions.

5. Plaintiff's claim of hostile work environment based on her disability should be dismissed, as she can not show severe or pervasive conduct so as to alter the conditions of her employment or create an abusive working environment.

### Plaintiff's Response

Hodson claims in her response that she suffers from back pain and that her doctor released her from work at the end of January 2002 "to give her back a rest for a couple of months." Brief in Opposition, page 2. IHS placed her on unpaid medical leave and she was not paid worker's compensation or short or long term disability during this time period. IHS sent her confirmation by letter that she was on medical leave without pay.

Thereafter, she also received correspondence offering her a light duty job position within her functional capacity evaluation range. When she returned to work, she was given a different job description by Dinges, which she claims included restrictions. However, she claimed the job assignment made by Dinges was not light duty work.

She attempted to discuss the matter with Shelia Rist, who told her to talk to Carl Kovski. When she complained to Kovski, Kovski told Hodson that the assignment made by Dinges was within her job restrictions. She claims she made "numerous requests for accommodations," but only alleged one request, same being that she requested to be hired in a desk job position. Brief in Opposition, page 2-3; *See also* Hodson Affidavit, paragraphs 11-14, 16.

On May 17, 2002, Hodson claims she was terminated by Dinges because she was not able to perform the work she had been assigned to perform that day. Hodson told the nurse who she was to be relieving that she could not work on the Northwest Hall, and in her mind, gave ample notice that she would not be working the shift that day. Hodson Affidavit, paragraphs 2-3.

## Defendant's Reply to Plaintiff's Response

Again, Hodson's response does not address the legal insufficiencies which Defendant asserts precludes her allegations of discrimination under the ADA.

With respect to Defendant's contentions in its Brief in Support of Motion for Summary Judgment, the facts alleged by Hodson in her responsive pleading still do not establish a *prima facia* case of discrimination under the ADA because Hodson can not prove she had a disability as defined under the Act. Hodson does not refute the case

law cited by Defendant which holds that impairments such as Hodson are not disabilities as defined under the ADA. Taylor v. Pathmark Stores, Inc., 177 F.3d 180 (3d Cir. 1999); Kelly v. Drexel University, 94 F.3d 103 (3d Cir 1996); Marinelli v. City of Eire, 216 F.3d 354 (3d Cir. 2000).

The fact that Hodson claims she was given two different job descriptions, assuming this is true, is irrelevant to the issue as to whether or not Hodson had a disability as defined under the Act and whether she can prove she was substantially limited in a major life activity.[2] In fact, Hodson has yet to state what limitation in a major life activity she is claiming. Assuming she claims she is limited in walking and working, Hodson's factual scenario and asserted physical impairments do not rise to the level that is required to show one is substantially limited in either life activity. Since she can not prove she was disabled as defined under the act or substantially limited in a major life activity, it can not be concluded that IHS discriminated against her based on her alleged disability. Therefore, her ADA claim should be dismissed.

Moreover, even if Hodson could prove she is disabled as defined under the Act, IHS had a legitimate business reason for terminating Hodson, and Hodson has not alleged, nor does she have evidence to prove that Defendant's asserted reason is pretextual. Also, it is undisputed that Hodson was permitted to work on light duty status for over a year and that Hodson refused a job assignment and walked out on her shift. Therefore, IHS provided reasonable accommodations to Hodson.

Additionally, Hodson's claims of hostile work environment fail, as Hodson can not show severe and pervasive conduct which altered the conditions of her employment or

---

[2] The job description provided for Kovski stated that she would be given other duties as needed, and, therefore, the list provided by Kovski was not exhaustive.

9

created an abusive working environment. The only conduct she can muster is that Watkins allegedly tossed a small box of lancets at her and asked if it was too heavy for her.

With respect to the assertions made in Hodson's response, Defendant does not contest that Hodson was released from work by her personal doctor, Dr. Ang, due to alleged back pain. The correspondence referred to by Hodson, dated February 4, 2002, which advised Hodson she was being placed on unpaid medical leave, based upon the excuse from Dr. Ang, also advised Hodson that in order for her to be approved for any type of paid leave through worker's compensation, she would have to see Dr. Euliano, who is the doctor Hodson treated with through the employer's insurance. See Exhibit "A." This letter shows no discriminatory intent, nor does same prove any discrimination, but merely advises Hodson of her obligations.

Hodson apparently saw Dr. Euliono after receipt of this correspondence, as Dr. Euliano released Hodson back to work, beginning February 11, 2202 with a 20 pound lifting restriction. See Exhibit "B."

Upon receipt by IHS of this work release, correspondence was sent to Hodson on February 19, 2002, advising that IHS had light duty work available for her within her 20 pound lifting restriction dated February 11, 2002, per Dr. Euliano, and within the functional capacity range limits, dated December 18, 2001, set forth by Dr. Ang. Hodson was asked to review the job description with her doctor (Dr. Ang) and have him notify IHS if there was something on the job duty restriction she could not perform. The job description included Hodson performing nursing assessments, feeding patients, and performing other duties as assigned. See Exhibit "C."

10

Dr. Ang continued to release Hodson from work until February 28, 2002. See Exhibit "D." After this release expired, Hodson continued to complain of back pain. On March 5, 2002, Dr. Euliano issued a report advising he was releasing her from work for an additional two weeks, as Hodson continued to complain of back pain. He "gave her the benefit of the doubt, however, [he] think[s] that her complaints are out of proportion to the MRI findings that we have been able to ascertain up until this point in time." See Exhibit "E." After that release expired, and apparently because Hodson continued to remain off from work, Hodson obtained yet another doctor release from Dr. Mary Ann Wendel, excusing Hodson from work on February 14 through the 17th due to "back strain" and again from February 18 through April 1, 2002. See Exhibit "F."

When Hodson actually returned to work on March 29, 2002, the most recent work restriction provided by any doctor was the 20 pound lifting restriction issued by Dr. Euliano on February 11, 2002. There were no other restrictions on working patient halls or caring for patients. Therefore, Hodson was assigned to resume her prior position as RN, performing duties assigned to her on patient halls. However, Dinges made a notation on Hodon's schedule to remind her that she should not lift above 20 pounds, should have the aides and nurses help her push the medicine carts, and should not reposition or turn patients. See Exhibit "G."

Additionally, the fact that Shelia Rist told Hodson she had to talk to Kovski about any complaints related to her job assignment is of no factual significance. Kovski was the person who handled these types of matters and it was appropriate for Rist to advise Hodson who she needed to address her concerns with. According to Hodson, when she complained to Kovski, he advised her that the assigned work was within her job

restriction of not lifting 20 pounds. Hodson has never claimed she was asked to lift something over 20 pounds, but merely asserts she could not perform the job. Hodson also does not specify what part of the assignment was outside her job description. Hodson herself can not define what is and what is not light duty work, nor can she pick and choose which assigned duties are acceptable, so long as the duties are within her job restriction. It should be noted that Hodson was given the opportunity for Dr. Ang to provide additional comments about the types of work that Hodson could not perform, per the February 19th correspondence from Kovski, and neither Hodson nor Dr. Ang ever provided any supplemental information or restrictions.

Simply because Hodson did not like the job assignment that was provided to her by Dinges or that she personally felt she could not perform the work, does not mean that IHS failed to reasonably accommodate her or otherwise discriminated against her. Hodson voluntarily decided on her last day of work that she was not going to perform the job assignment and abandoned her position. The fact that she told a nurse and Dinges that she could not do the job does not equate to proper notice to miss work and does not excuse her misconduct, which resulted in her termination.

Therefore, Plaintiff's claims of discrimination, harassment, and/or hostile work environment under the ADA should be dismissed.

### C.  Plaintiff's Claims of Sexual Harassment, Hostile Work Environment and Sexual Discrimination

Defendant argued the following in its Motion for Summary Judgment:

1. Plaintiff fails to establish a *prima facia* case of sexual harassment, as there is no evidence that she was subjected to adverse tangible employment action for

the purpose of harassment, nor can she prove there was a hostile work environment.

2.     There is no evidence that Hodson was retaliated against for making complaints of sexual harassment, that she was constructively discharged because of a sexually hostile work environment or that a decision to terminate her was due to her gender.

3.     Hodson's claims of sexually hostile work environment, which stem from alleged statements made by Watkins, fail as Hodson has no evidence that she suffered intentional discrimination based on her sex, that the discrimination was severe and pervasive or that the comments would have detrimentally affected a reasonable person of the same protected class in the performance of her job.

4.     Hodson's claims of sexual discrimination fail, as she can not establish a *prima facia* case of discrimination, Defendant has asserted a legitimate non-discriminatory reason for Hodson's termination and Hodson has failed to show that Defendant's reason is pre-textual.

### Plaintiff's Response

Again, Hodson's response does not address the legal insufficiencies which Defendant asserts precludes her allegations of sexual harassment, hostile work environment and sexual discrimination. The facts alleged by Hodson do not establish a *prima facia* case of sexual harassment, hostile work environment or sexual discrimination.

Hodson responsive pleading alleges the same limited incidents that were addressed by Defendant in its original Brief in Support of Summary Judgment. She

claims that Watkins humiliated her when he discussed his sexual fantasies, exploits and his genital endowments in front of her. She alleges she once complained to Kovski, but that nothing was done. The harassment allegedly escalated after she complained to Kovski. However Hodson does not state what Watkins did to her after she complained to Kovski. The only assertion made by Hodson is that Watkins pinched another nurses' nipples. Hodson did not witness this event, but claims the nurse told her it happened. Hodson did not report this incident to anyone at IHS, including Kovski. Hodson Affidavit, paragraph 10; Hodson's Deposition, page 56-57.

### Defendant's Reply to Plaintiff's Response

There is no dispute that Hodson's termination was totally unrelated to any of Hodson's allegations of sexual harassment, hostile work environment or discrimination by Watkins. Waktins is the only person Hodson alleges sexually harassed/ discriminated against her. There is no evidence that Hodson's termination had anything whatsoever to do with her gender, nor of the alleged sexual misconduct conduct by Watkins. In fact, Watkins was not the least bit involved in Hodson's termination.

As set forth in Defendant's Statement of Material Facts Not in Dispute, which Hodson has not responded to, Defendant, for the purposes of summary judgment only, has already deemed the facts set forth by Hodson above to be true. *See* Paragraphs 24 and 25 of Defendant's Statement of Material Facts Not In Dispute. Hodson has not alleged any different or new facts from her Complaint, Amended Complaint, Answers to Interrogatories or in her deposition. Therefore, it continues to be Defendant's position that Hodson can not establish a *prima facia* case of sexual harassment, hostile work

environment or discrimination, as set forth at length in Defendant's Brief in Support of Motion for Summary Judgment.

### D. Plaintiff's Claims of Retaliation and/or Wrongful Discharge.

Defendant argued the following in its Motion for Summary Judgment:

1. Hodson fails to establish a prima facia case of retaliation because she can not show a causal connection between her protected activity and her termination. Although Hodson made complaints about Watkins and Dinges that were in a nature of personal conflicts, she never specifically complained of any religious, sexual or any other discrimination/ harassment during her employment at IHS. There is no evidence that she was retaliated against for making any complaints. Even if she had made complaints, there is no connection between the reason why she was terminated and her complaints.

2. Hodson is not entitled to relief under any wrongful discharge theory, as Plaintiff has other remedies available to her not based on common law and has asserted them.

3. Hodson did not originally plead she was terminated because she filed for worker's compensation, but even if she had, she lacks evidence to suggest the reason for her termination was because she filed for worker's compensation. She worked for IHS for more than a year after she filed for worker's compensation, and, therefore, there is no causal connection between her filing for worker's compensation and her termination.

### Plaintiff's Response

In Plaintiff's responsive pleading, for the first time, Hodson claims she was retaliated against for her work related injury when supervisors Robin Otis and Jen Heiser tried to force her to work overtime, to make up for time she missed to take a medical related test. On another occasion, Lorie Gurdak, Director of Nursing, and Shelia Rist allegedly tried to make her work a full-duty assignment against her doctor's orders. Hodson Affidavit, paragraph 12.

Hodson also alleges that after she was terminated from her position, she contacted Ray Martinez, Corporate Human Resources Director, about what happened between her and Dinges. Martinez repeatedly told her she was not terminated and changed her status to a leave of absence based upon worker's compensation. According to Hodson, she began receiving payment from worker's compensation within 10 days. Hodson states that she did not come to the conclusion she had been discriminated against during her employment at IHS until her worker's compensation hearing. Hodson Affidavit, paragraphs 4-5.

Hodson attached documentation with her responsive pleading that shows that IHS initially showed Hodson's separation of employment as being a termination for job abandonment for refusing a hall assignment. See Exhibit "H." However, Hodson has now produced a new document which indicates Martinez rescinded the termination and changed it to a leave of absence based on worker's compensation. See Exhibit "I."

### Defendant's Reply to Plaintiff's Response

IHS assumes for the purpose of summary judgment only that Hodson's assertions are true.

16

Should this Court believe that Hodson was not terminated, based upon Martinez's actions in stating that Hodson was not fired, rescission of the termination, and placement of Hodson on leave of absence based on worker's approximately, Hodson can not have a claim of wrongful termination. In order for Hodson to have a claim for wrongful termination, there must be a termination. Indeed, not only can there be no common law wrongful termination, there can be no statutory discrimination claim under Title VII or the ADA.

Moreover, Hodson was ultimately paid the amount of $404.09 per week in worker's compensation benefits, pursuant to a Notice of Compensation Payable issued on July 10, 2002. Hodson was paid this amount weekly, for nearly approximately 49 weeks before a commutation of her claim was reached. On April 30, 2003, pursuant to a Compromise and Release Agreement, Hodson was awarded the sum of $57,500.00. A true and correct of the Order of Court accepting the Compromise and Release Agreement is attached as Exhibit "J." In total, Hodson received $104, 268.26 in total worker's compensation benefits, including paid indemnities, paid medical costs and other related expenses. See Exhibit "K."

On April 29, 2003, Hodson signed a resignation letter, resigning her employment from IHS, and acknowledging her resignation is permanent and irrevocable. See Exhibit "K." Hodson would not have signed a resignation from IHS, if she had been previously terminated from her position.

Should this Court believe that Hodson was terminated, Hodson can not establish a *prima facia* case of termination based upon any type of retaliation because she can not show a causal connection between any protected activity and her "termination."

Hodson can not simply reply on the fact that an adverse employment action happened after she filed a worker's compensation claim, as this is insufficient to satisfy her burden in establishing a link between the two events. She also can not draw an inference from the mere fact that IHS opposed Hodson's claim. An employer has a right to contest a worker's compensation claim and require that the claim be proven. Robinson v. City of Pittsburgh, 120 F.3d 1286, 13202 (3d Cir. 1997); Sharkey v. Federal Express Corp., 2001 U.S. Dist. LEXIS 72 (E.D.Pa. 2001).

While Hodson now claims that IHS once attempted to force her to work overtime and one forced her to work full-duty against her doctor's orders, she still is unable to show a causal connection between these two events and her termination. Also, she does not state when these events allegedly happened and shows no proximity between the time when these events happened and her termination. Two of the persons Hodson claims did these things to her (Otis and Gurdak) had nothing to do with Hodson's termination and the other two persons (Rist and Heiser) were merely witnesses to the events that took place on Hodson's final day of work. Moreover, Dinges, the person who allegedly terminated her position, had nothing to do with the processing or handling of Hodson's worker's compensation claim, nor are there any allegations that Dinges attempted to force her to work overtime. Hodson's own personal opinion that she should not have to work on patient halls, and claiming that any work on patient halls was full-duty, is not enough to sustain her burden, when her work restriction only provided for a 20 pound weight limitation. There is no evidence produced by Hodson that her work restriction prevented her from performing her RN position and being assigned work on patient halls.

Accordingly, there is no evidence that Defendant she was retaliated against Plaintiff for making alleged complaints about discrimination or because se filed a worker's compensation claim. Therefore, Plaintiff's claims of retaliation and/or wrongful discharge should be dismissed.

                                            Respectfully submitted,
                                            MARGOLIS EDELSTEIN

                                            By_____
                                            Charles H. Saul, Esquire
                                            PA ID No. 19938
                                            Liberty J. Weyandt, Esquire
                                            PA ID No. 87654
                                            1500 Grant Building
                                            Pittsburgh, PA 15219
                                            (412) 281-4256