IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHLEEN HODSON | ) | |
| | ) | Civil Action No. 03-0374e |
| Plaintiff, | ) | |
| | ) | Judge Maurice B. Cohill, Jr. |
| vs. | ) | |
| | ) | |
| ALPINE MANOR, INC. d/b/a | ) | |
| INTEGRATED HEALTH SERVICES | ) | |
| OF ERIE AT BAYSIDE | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' REPLY TO DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**A. Plaintiffs' Claims of Religious Discrimination/Harassment**

1. Plaintiffs' Title VII Complaint of religious discrimination must be allowed to go forward because Plaintiff can meet her burden of establishing a prima facia case of discrimination by a preponderance of the evidence. Plaintiff can prove that she suffered an adverse employment action under circumstances giving rise to unlawful discrimination.

2. Plaintiff ascertains that there was nothing "ordinary," about what went on at, my place of employment, as the Defendant, calls it! Plaintiff has put forward, legally sufficient evidence, into an actionable complaint of discrimination. Any remarks directed to the myself, because of my religion, rather they " were isolated in nature, remote in time and/or were made in jest," are just as offen-

sive, reading them now, as they were at the time they occurred. "Jest," reads in the dictionary, as being, an object of laughter or mockery. Being a reasonable person, I was not just offended, I was appalled!

3. Plaintiff, was <u>unable</u>, to perform the work assignment, and told the Director of Nursing, the Assistant Director of Nursing, and the Human Resource Director, this. Dave Dinges, the DON stated, "then, you no longer work here." The Human Resource Director, Sheila Rist, sat, right there, through this whole incident, and said or did, nothing. Plaintiff called the Corporate office, this same day and told Ray Martinez, the head Resource Director, for the whole corporation, "you are not terminated." He also said, "this should have never been handled like this."

4. Plaintiff can establish that the reasons for her termination were false, and show the blatant, disability discrimination, and has already put forth evidence of "weaknesses, implausibility's, inconsistencies, incoherencies, and contradictions," in IHS' proffered legitimate reason, for its' action. A reasonable fact finder could rationally find them worthy of credence.

5. Plaintiffs' complaint of a hostile work environment, should be allowed because: she has sufficient evidence to prove she was subjected to a hostile work environment based on her religion; she can prove that the conduct was severe and pervasive; and a reasonable person of the same protected class would also be detrimentally affected in the performance of his/her job.

2

### Plaintiffs' Reply to Defendants' Response

The complaints made in Plaintiffs' response are sufficient to establish a prima facia case of religious discrimination and harassment;

(1.) there was and is, an adverse employment action under the circumstances giving rise to unlawful discrimination;

(2.) There is a causal connection between Plaintiffs' complaint of religious discrimination and the harassment and her termination; (3.) a personality conflict between parties does not equate discrimination, but harassment and mockery, does. (4.) The note, posted by Dinges, plus his discussion of me, among my co-workers and others, was severe and pervasive as to create a hostile work environment, and being a reasonable person, I was offended by the note, and the comments; (5.) Watkins' statements and actions were made, in an area of close proximity, to the Plaintiff, in an almost gleeful, disregard, for her feelings of humiliation. This, as I have stated before, happened on numerous occasions. (6.) Plaintiffs' religion had much to do with the Plaintiffs' denied promotion and her termination; and (7.) the record is not," absolutely devoid," of any evidence that IHS' reason for the Plaintiffs' termination or its' decision to hire another employee to the MDS position was pre-textual.

Therefore, the Plaintiffs' complaint of religious discrimination and harassment, and hostile work environment must be allowed to go forward.

### B. Plaintiffs' Complaint of Discrimination Under the ADA

1. Plaintiff, can establish a prima facia case of disability discrimination under the ADA because she did have a physical disability, due to being injured, on the job. Plaintiff can prove she was, and is, substantially limited in a life activity. Plaintiffs' excruciating back pain and spasms, is amply documented, and at the time of Plaintiffs' termination, was scheduled for spinal injections, which I told Dave Dinges, and Sheila Rist, the Human Resource Director, who just sat there and did nothing! My impairment is substantial enough, that the Social Security Administration has found that I can no longer do the work of an LPN.

2. The Defendant is mistaken when they stated that I was only, off work, intermittently. Plaintiff had only been, back to work, about five weeks, after being taken, off work, for over two months for increased back pain. And the Defendant is mistaken when they state, "Hodson admits she takes no medication." Plaintiff takes pain and muscle relaxant medication, on a regular basis. The day of my deposition I stated I had taken no medication on that day, only, because of the deposition. The reason Plaintiff approached and asked the administrator, Carl Kofski, for the MDS position, was because it was a desk-job, not because it was any kind of promotion. I felt with my limitations, and the constant pain I was in, my place of employment would consider giving me a less, physically demanding job. I had already did some of the paperwork required by the MDS department, and knew that I could do it. I relayed most of this to Mr. Kofski, during our conversation, and he knew how desperate I was, for the

job. Kathleen Hodson, the Plaintiff, did have a disability as defined under the act, and IHS did not accommodate her disability.

      3. IHS did know that the Plaintiff was disabled, and struggling, physically. Plaintiff was under several physicians' care, and as evidenced in much of the documentation presented by both parties, Plaintiff most definitely, was perceived to be disabled. Plaintiff was released to light-duty, which she was on , before being taken off-work, for increased back pain , at the end of January, 2002. Plaintiff was sent two letters, certified, by the administrator, one telling her to fill out short-term <u>disability</u> papers, the other telling her to come back to work, with her <u>light-duty job description</u>, attached. When Plaintiff did return to work, a totally different, assignment, was given to her, she was assigned to a hall, which is not considered " light-duty," in this facility, or any other nursing facility, for that matter. Light-duty, as apposed to, full-duty with restrictions, is the crux here. Plaintiff is able to prove that , no employee was ever assigned to his or her usual full-duty job , if a physician put that employee on "light-duty."

      4. Plaintiff has already met her burden of proof in establishing a prima facia case of discrimination under the ADA.
of discrimination under the ADA. IHS has not articulated a clear business reason for Plaintiffs' termination, in fact, Plaintiff can show conflicting data, and statements of contradiction, concerning rather Plaintiff was fired, rather she quit, or rather she was " still on the payroll." It all depended on the time and place ie. Dinges testified at the workmans' comp hearing that he was told to say

5.

I was still an employee. Brigitte Miller said I was terminated. Sheila Rist said, I quit. Ray Martinez told me, "I was not terminated."

      5. Plaintiff has shown by a preponderance of the evidence that the Defendants' reason for her termination was pre-textual. Defendant forced her to work full-duty with restrictions, instead of light-duty with restrictions, for the five weeks, prior to terminating her, because she was <u>unable</u> to do it. This is not accommodating to her within her restrictions, it is blatant, disability discrimination. Plaintiffs' Complaint of hostile work environment based on her disability should definitely, be allowed, as she can show severe and pervasive conduct which did alter the conditions of her employment and created an abusive working environment.

### Plaintiffs' Reply to Defendants' Reply to Plaintiffs' Response

Again, Plaintiff contends that the Defendant has not shown that discrimination, did not occur. Plaintiff pleads with the Court to allow her Complaint of disability discrimination to go forward. There is a preponderance of evidence, and a jury will find this to be true, and justice will be served.

Therefore, Plaintiffs' Complaint of discrimination, harassment, and hostile work environment under the ADA should be allowed to go forward.

### C. Plaintiffs' Complaint of Sexual Harassment, Hostile Work Environment, and Harassment, and Complaint of Retaliation and Wrongful Discharge

6.

1. Plaintiff has established a prima facia case of sexual harassment by providing the evidence that she was subjected to adverse tangible employment action for the purpose of harassment, and has proven there was a hostile work environment.

2. There is evidence that the Plaintiff was retaliated against for making complaints of sexual harassment to the administrator.

3. Plaintiffs' Complaint of a sexually hostile work environment, which stem from Watkins' many statements describing his sexual fantasies, his sexual exploits, even to the size of his genitalia. Plaintiff contends that this was blatant, and intentional. Oh, and reported! The evidence shows that Plaintiff suffered humiliation and was severe enough to make her go and complain to the administrator, which was very hard to do, considering every thing else, she was struggling through, at the time! The administrator has even admitted that Plaintiff came and complained to him about this. He should have followed company policy and reported these serious, complaints, of harassment, and sexual harassment to Corporate! Did he? I don't know? The discrimination was severe and pervasive and the comments would have detrimentally affected any reasonable person of the same protected class in the performance of her job.

4. Plaintiff has established a prima facia case of sexual discrimination. Defendant has not asserted a legitimate non-discriminatory reason for the Plaintiffs' termination, and Defendants' reason is shown to be pre-textual.

7.

### D. Plaintiffs' Complaint of Retaliation and Wrongful Discharge.

1. Plaintiff has established a prima facia case of retaliation, because she was on workmans' comp., due to being injured on the job, and was unable to perform her job duties, to full capacity, as she did, before her injury. The retaliation was ongoing, intentional, severe and pervasive. The Defendant is mistaken when they state that I, the Plaintiff, Kathleen Hodson, pro se, never specifically complained of any religious, sexual, or any other discrimination/harassment during her employment at IHS. I complained to Sheila Rist, the Human Resource Director, on several occasions, questioning her about being, on the hall, when I was supposed to be on, "light-duty." She would just tell me, "ask Carl." I also made this same complaint to Carl, the administrator. I also complained to Carl Kofski, the administrator, about the harassment, and sexual harassment. Plaintiff has brought out a preponderance of evidence, to prove retaliation.

2. Plaintiff is entitled to relief under a wrongful discharge, and can show this, in the four conflicting, data sheets, filled out by the Human Resource Director, the letter from Brigitte Miller, who scathingly lists the reasons why, I was fired!

3. Plaintiff worked for IHS for more than year after being put on, workmans' compensation, medical only. The harassment, and retaliation, was more than any person should have to go through. After being off work because of increased back pain, I had only been back for five weeks, and I was visibly, struggling to do the work. I'm sure management could see this, not to

8.

mention my complaints, and request for the open desk-job. I can definitely see a "causal connection,' between my being on workmans' comp. and my termination and I believe the Court, or a jury, will see this too!

### Concerning Defendants' Reply to Plaintiffs' Response

Plaintiff can have a Complaint of wrongful termination, due to the direct action of Dinges, and Sheila Rist, the Human Resource Director, who was present, and said or did, nothing. I tried to return to work, but the administrator, Kofski, said I couldn't. Ray Martinez, told me that "light duty,' work was no longer available, to me. Brigett Miller, of corporate wrote that I was not allowed to see my personal file to the Labor Department, because I had been terminated. Ms. Miller still is employed in the legal department at Corporate. Ms. Miller also wrote a scathing letter to the EEOC, explaining why I was terminated. Defendant, in this reply, is doing the very same thing, that's been done to me all along. Changing the naming of the action that was done to me, to suit the circumstances! This is not right, it is a travesty of justice!

    This Court should believe that the Plaintiff, Kathleen Hodson, pro se, was terminated, and Plaintiff can indeed establish a prima facia case of termination based upon retaliation, because of being on workmans' compensation, do to being injured on the job. Defendant is confused as to the people involved, and instances of the ongoing harassment, and disability discrimination, that happened, and I took notes of, at the time it happened, not after. I also listed witnesses to these incidents. (Otis and Heiser) humiliated me, in front

of residents, their families, and co-workers, by telling me I had to stay and work over, to make up for a medical test I had that day. Loud, and in front of everyone, one told me not to come to work the next day, the other told me to come in. This treatment is called harassment! ( Gurdak and Rist ), are the two, DON, and Human Resource Director, who forced me to work full-duty, on the hall, agaist my doctors' orders. Sheila Rist , had everything , to do with processing and handling Plaintiffs' workers' compensation claim. Also, Plaintiff is an LPN, not an RN.

Accordingly, there is a preponderance of evidence that the Defendant retaliated against Plaintiff for making complaints about discrimination and she filed a workers' compensatin claim, after being injured, on the job. Therefore, Plaintiffs' claims and Complaint of retaliation and wrongful discharge should be allowed to, go forward.

Respectfully submitted,
By /s/ Kathleen Hodson
Kathleen Hodson, pro se
2201 Keystone Drive
Erie, PA. 16509
814-868-3096