IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHLEEN HODSON ) | |
| ) | Civil Action No. 03 - 0374e |
| Plaintiff, ) | |
| ) | |
| vs. ) | Judge Maurice B. Cohill, Jr. |
| ) | |
| ALPINE MANOR, INC. d/b/a ) | |
| INTEGRATED HEALTH SERVICES ) | |
| OF ERIE AT BAYSIDE ) | |
| ) | |
| Defendant. ) | |

## AFFIDAVIT OF DAVE DINGES

I, Dave Dinges, do hereby depose and voluntarily state:

1. I have personal knowledge and I am competent to testify as to the matters set forth herein.

2. I was formerly employed at Integrated Health Services of Bayside (hereinafter "IHS") from 1993 through 2003. I was employed in several positions including as a staff nurse, MDS coordinator, Nursing Supervisor and Acting Director of Nursing. Kathleen Hodson was employed as an LPN during the time I was employed by IHS and at times, I was her direct supervisor.

3. I am aware that Kathleen was on medical leave and/or light duty from approximately 2001 until the day she quit her position, on or about May 17, 2002. I do not recall the details of her injury, expect that she had a weight restriction of not being

1

able to lift more than 20 pounds. There was a period of time when she did not work at all, as she was on medical leave.

4. IHS accommodated Ms. Hodson based on the recommendations of her doctor. IHS made accommodations for Ms. Hodson such as having other employees push the medication cart down the hall and helping her open and close drawers, lift heavy equipment or move patients. However, often times, Ms. Hodson chose to push medication cart herself. Sometimes other nurses treated patients for her if she was unable. She was also permitted to go to the physical therapy room and put hot packs on her back and lay down on the therapy mats during breaks. In my opinion, IHS accommodated Ms. Hodson more than any other employee had been accommodated and there were never any problems doing so.

5. I never asked Ms. Hodson to perform work outside of her job restrictions. Ms. Hodson never complained to me that she needed further accommodations to perform her job or that she had asked for a certain accommodation and it was denied to her. She never complained to me about being in pain and she was able to work a full 8 hour shift. To my knowledge, Ms. Hodson was not disabled in any way, nor did I perceive her as being disabled. She never claimed to be disabled. She simply was on light duty status from an injury.

6. When Ms. Hodson returned to work after being on leave in March 2002, I made a notation on her schedule documenting her restrictions and confirming accommodations for her. A true and correct copy of this schedule is attached as Exhibit "A." I reminder her not to life anything over 20 pounds or move patients and to have the other staff push her medicine cart.

2

7. Ms. Hodson often was over dramatic about her physical limitations and it was my impression that she did not want to work and would do just about anything to get out of performing an assigned task. There were times when she would wheel herself around in an office chair with wheels around the nurses station and other moments where she would have no trouble pushing a medication cart down the hall. She would ask other nurses to carry a patient chart for her that weighed no more than 1 or 2 pounds. She would complain that there was no one around to help her, but there were always nurses aids assigned to every hall and all she had to do was ask. There were times I would see her bending down to pick something up off the floor with no difficulty. She complained she did not want to perform certain tasks, even though those tasks were within her light duty restrictions. Ms. Hodson had a problem with me because I held her to her job requirements and I would not let her neglect her work.

8. To my knowledge, Ms. Hodson never filed any complaints against me while she worked at IHS for discrimination or harassment. If Ms. Hodson wished to file a complaint against me she could have done so through the Administrator at IHS, through corporate headquarters and there was a 1-800 hot line that employees could call. These procedures were outlined in the employee handbook and employees were advised of these procedures upon hire and at training sessions. Furthermore, the 1-800 hotline number was posted throughout the facility and employees had access to call this hotline at anytime.

9. I deny that I ever discriminated against Ms. Hodson based on her religion or because she was on light duty status. Any decision I made with respect to Ms. Hodson's employment was done for legitimate reasons having nothing whatsoever to do with her religious beliefs, for harassment purposes, or because of her physical

3

restrictions. IHS has a zero tolerance policy with respect to discrimination and harassment. There was training provided at IHS regarding discrimination and harassment and there was also a yearly refresher course. Additionally, I am in the Navy Reserves and every year I am trained on discrimination and harassment issues. I have never had any other allegations of discrimination or harassment filed against me.

10. Ms. Hodson was very open about her religious beliefs and she talked about it freely, although I did not know the exact religion she practiced. I thought she might practice the same religion as my family, as she once asked me if my brother went to her church because she thought she witnessed my brother's child being baptized. If Ms. Hodson does share the same religion as my family, it makes no sense that I would discriminate against her because of her religion.

11. I am aware that Ms. Hodson claims I discriminated against her based on her religion because of some note I allegedly posted on the bulletin board. I did place notes on the pin-up board for staff, but the notes were always folded in half and/or placed in an envelope so other staff could not read the note. I never placed a note on the pin-up board disparaging Ms. Hodson about her religious beliefs. As I recall, the note I placed on the pin-up board for Ms. Hodson questioned why she did not perform a treatment as ordered by a physician. She claimed the patient did not need treatment as per ordered by physician and she did not make proper notation in the file.

12. I may have made a comment one time to another employee questioning how Ms. Hodson treated patients. Ms. Hodson would make statements around the facility that if it were not for her, patients would die at IHS or that she had saved them. Unfortunately, death is part of reality when you work at a nursing/rehabilitative facility and as far as I was aware, Ms. Hodson was not ever in a position at IHS were she

4

personally saved a person's life. I may have commented once by questioning who she saved and what she did to them. I believe I questioned whether she performed CPR and said, "What did Kathy do, put her hands on them and heal them." This was an isolated comment which was made in jest. It certainly was not meant to be discriminatory or mean in any way. Ms. Hodson is taking one isolated comment and blowing it out of proportion. She never complained to me that this comment offended her or upset her, and as far as I am aware, she never filed a written complaint about this comment. If she would have complained to me, of if I was aware that the comments offended her, I would have apologized to her.

13. Ms. Hodson did apply for a MDS position ( a patient assessment/ medical billing documentation position) that became open and I interviewed her for the position. I ultimately hired another employee for the position. Although Ms. Hodson may have worked at IHS for a longer period of time, her assessment skills and documentation skills were lacking from what the position required and she was not as qualified for the position as the person I hired. Promotions are based on nursing skills and not seniority. Ms. Hodson was not denied this position because of any discriminatory or harassment reasons. There simply was another applicant who was more qualified.

14. During the course of Ms. Hodson's employment I verbally reprimanded or wrote her up on occasions for not following proper policy and procedure.

- On August 21, 1997, Ms. Hodson was written up for recapping a used lancet, which resulted in her sticking herself with a needle. It was a high risk behavior which resulted in her exposing herself to the patient's blood. Training on this procedure is provided at IHS. Ms. Hodson signed off on this warning and it was witnessed by Cathy

5

Manion. Ms. Hodson was told if this happened again, she could be terminated for following safety procedures.

   - On August 22, 1997, Ms. Hodson was written up for administering medication to the wrong patient. When the error was discovered, she failed to contact the physician and there was no documentation made in the patient's chart by Ms. Hodson. This was a serious infraction that could have caused serious harm to the patient. Ms. Hodson signed off on this written warning. She was told if this happened again, she would be terminated.

   - On May 14, 2002, I verbally warned Ms. Hodson for failing to properly complete a narcotics count and failing to properly note that a patient was given a narcotic. Another nurse, Young Bongatu was also verbally warned for this same incident. Ms. Hodson signed off on the verbal warning, but claimed she was being unfairly treated and that the other nurse was not reprimanded. The other nurse was reprimanded, but I did not discuss my dealings with the other nurse, as I do not share this type of personal information with other employees. I am aware Ms. Hodson claims that I laughed at her about this incident. I did no such thing and the reprimand was witnessed by another supervisor, Cathy Mannion.

   All of these reprimands were justified and were not for any discriminatory reasons or for harassment purposes. A copy of these written warning are attached as Exhibit "B."

   15.   On May 17, 2002, I assigned Ms. Hodson to work on the Northwest Hall. IHS was short staffed on this date and it was necessary for me to adjust staff assignments to cover the care for all the patients. When Ms. Hodson reported to work, she clocked in and was made aware of her assignment to the Northwest Hall. She did

6

not want to work in the Northwest Hall and claimed that she was only permitted to work in Ambassador Hall, which made no sense to me. I was never advised by anyone at IHS that Ms. Hodson was assigned solely to Ambassador Hall. In fact, no nurse is assigned to a specific hall. Although someone may generally work on one hall, nurses are rotated around the various halls when necessary to ensure coverage of care for all the patients. I asked her why she did not want to work in the Northwest Hall and she did not provide me with a reason. Attached as Exhibit "C," are my hand written notes and disciplinary action form documenting the events of this incident.

16. I acted within my supervisory duties to assign Ms. Hodson to a hall that needed nursing coverage. At no time did she request any accommodations to work at Northwest Hall. If she had obeyed my direct instructions to work Northwest Hall, she would still have been accommodated by doing only light duty work and the nurses' aides and other employees would have assisted her by performing the heavier work. Her same light duty restrictions applied to any hall she may have been assigned to work. Northwest Hall at the time had less patient acuity and it had more nurses' aides assigned to it. Ms. Hodson had the support staff she needed to perform her job in the Northwest Hall and her job responsibilities would have been no different than those on the Ambassador Hall.

17. Ms. Hodson told me she was not working on Northwest Hall and she demanded to be assigned to Ambassador Hall. By the time Ms. Hodson reported to me that she was not going to work on Northwest Hall, we were already behind in passing out medications due to being short staffed. I told Ms. Hodson that she was needed in Northwest Hall, that if she refused to work on the Northwest Hall she was abandoning the patients, and that there was no one else available in that hall. I told her

7

she could either work Northwest Hall or quit her position. She decided to quit and she walked out. When she walked off the job, she was in violation of IHS policy as she abandoned her patients without adequate notice or without finding a replacement. As a nurse at IHS, every employee is responsible for every patient in the building.

18. After Ms. Hodson walked out, I filled out a Disciplinary action form documenting what occurred, as explained above. A copy of this disciplinary action form is attached as Exhibit "C." I did not fire Ms. Hodson, she voluntary quit her position when she refused to work on the Northwest Hall and abandoned her patients.

19. Ms. Hodson never complained to me about any sexual harassment or other misconduct by Roger Watkins or any other employee for that matter. I never witnessed Mr. Watkins treating Ms. Hodson improperly.

20. I was never fired from my position at IHS as Ms. Hodson claims. I was suspended for a one week period of time and after investigation, I was asked to return to work as was paid my full salary. I left IHS in the summer of 2003, I was laid off and received a severance package from the company.

I have read and had an opportunity to correct this Affidavit consisting of __8__ pages and I hereby verify under penalty of perjury that the statements contained in this Affidavit are true and correct to the best of my knowledge and belief.

Dated: 7/26/05

_____
Dave Dinges

8

**BAYSIDE SCHEDULE**

Lt. Doty
AMB
JN

| | Mar | | S | M | Tu | W | Th | Fr | Sa | S | M | Tu | W | Th | Fr | Sa | S | M | Tu | W |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Hodson | 29 | 30 | 31 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| | 7 | 7 | 7 | — | — | — | 7 | 3 | — | 3 | 3 | — | 3 | 3 | 7 | 3 | 3 | 3 | 3 | 7 |

Ashley,

We can't stress you on days to week to get back in the swing of things. Remember first visit 20th Restriction. NO lifting. Have CNA's / Other Nurses help. Have CNA's / Supervisors / Nurses push wheel chairs. If Doug has pain. No re-positioning by yourself.

Res, Devits

EXHIBIT "A"



**BAYSIDE SCHEDULE**

1st AMB
Lt. Doley
Lin Hodson

| | MAR | | | | APR | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 29 | 30 | 31 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| | S | M | Tu | W | Th | Fr | Sa | S | M | Tu | W | Th | Fr | Sa | S | M | Tu | W |
| | 7 | 7 | – | – | 7 | – | 7 | 3 | 3 | 3 | 7 | 3 | 7 | 3 | 3 | 3 |

Kathy,

We can't stick you on days for a week to get back in the swing of things. Remember Gail 20 + positions NO lifting have cna's/other nurses help have cna's supervisors/nurses reach your chris to down for help. No repositioning by yourself residents

# EMPLOYEE COUNSELING FORM

DATE: 8/21/97

EMPLOYEE: Hodson K. LPN

**PROBLEM:** Failure to follow correct Policies & Procedures. LPN Hodson re-capped a "used" lancet which resulted in a needle stick. IHS Policy state NO recapping of sharps for any reason.

**STATEMENT BY EMPLOYEE:**

**RESOLUTION OF PROBLEM OR ACTION TAKEN:** Sharps are not to be recapped for any reason, @ anytime. You need to review Policies in the infection control Manual. Failure to comply c Policies in the future will result in Disciplinary action or TERMINATION!

David W. [illegible] RN                    Kathleen Hodson LPN  8-22-9
Signature of Staff Member                  Signature of Employee    Date
                  8/21/97
[illegible] Marman  8/22/97

EMPLOYEE COUNSELING FORM


EXHIBIT "B"

# EMPLOYEE COUNSELING FORM

DATE: 22 Aug 97

EMPLOYEE: Hodson K. LPN

**PROBLEM:** MEDICATION ERROR — On 21 Aug 97 LPN Hodson Administered Valium 5mg to a Resident instead of Oxycontin 20, as per Physician orders. The Resident had no Valium orders. The error was discovered during the Narcotic count @ the end of the shift when the count was found incorrect. When the error was discovered the Physician was never notified and there was no Documentation that the Residents status was evaluated!

**STATEMENT BY EMPLOYEE:**

**RESOLUTION OF PROBLEM OR ACTION TAKEN:** This was a serious error which had great potential to cause harm to the Resident. Great care must be given when administering Narcotics and/or any medication. You will be suspended next occurrence without pay. Should an incident of such nature occur again Disciplinary action and/or Termination will result.

_David W. Winger RN_ 8/22/97
Signature of Staff Member   Date

_Kathleen Hodson LPN_ 8-22-97
Signature of Employee   Date

_JoAnn Mannon RN_ 8/22/97

EMPLOYEE COUNSELING FORM

P+6

# Disciplinary Action Form

## Disciplinary Action Form

Date: 14 May 02
Name: K. Hodson (LPN)
Dept.: NSG

Disciplinary Action:

Verbal* [X]   Written [ ]   Written & Suspension [ ]   Discharge [ ]

To the employee:

Your performance has been found unsatisfactory for the reasons set forth below. Your failure to improve or avoid a recurrence will be cause for further disciplinary action.

Details: Failed to complete Narcotic Count, Count found Incorrect, Failed to document Narcotic given to Resident; on 13 May 02.

\* Employee was provided Education Materials " Maintaining Control over Controlled Drugs," Its Handout.

A copy of this warning was personally delivered to the above employee by:

_____ RN, D.O.N
Supervisor

_____
Date

I have received and read this warning notice. I have been informed that a copy of this notice will be placed in my personnel file.

Kathleen Hodson LPN
Employee

5/14/02
Date

Happy Nurses' Week

Usually the supervisor "pencils in" your name, and the next day, asks you to sign in the space in the nurse book provided. I very seldom forget to sign off, that's why I can't understand being written up for this. I see several blank spaces in the nurse book & I asked Dave about them. I'm not to worry about anyone else, this was about me, only! K. Hodson LPN 5/14/02

FORMS-6

On 17 May '02 Cathy Hodson LPN came to me @ approx 3:20pm to discuss her Hall Assignment. I took her in the office c̄ Cathy Mannion RN ADON & Shelia QIST. LPN Hodson stated "I can not work that hall" referring to NW Hall. I asked her why she stated I can't. I asked her why she said people say it hard. I told her there was only 21 residents on that hall and it is much easier than it was 2wks ago with 29 residents. She said I can't work it, I just can't. I asked LPN Hodson why can't you work it if you haven't tried it since you've been back? Cathy stated It's not in my restrictions Restriction to work down there. I told her your restriction are a 20# wt lift limit, no Pushing, no Pulling, Regardless of which hall you work on. Cathy stated well I can't do it. I asked why, give me a reason? Cathy stated I don't have to, I'm leaving. I told her if you leave you will no longer be employeed here for refusing your assignment Cathy stated I'm leaving, & left.

**EXHIBIT "C"**

David Wallinger RN DON
5/17/02

# Disciplinary Action Form

## Disciplinary Action Form

Date: 17 May 02
Name: Cathy Hodson LPN
Dept.: Nsg

Disciplinary Action:

Verbal* ☐   Written ☐   Written & Suspension ☐   Discharge ☒

To the employee:

Your performance has been found unsatisfactory for the reasons set forth below. Your failure to improve or avoid a recurrence will be cause for further disciplinary action.

Details: LPN was Assigned NW Hall on 17May 3-11 shift. LPN came to D.ON c/o "She could not work that Hall, it was not in her restriction." I told her, her restrictions were 20# wt restriction, no pulling or lifting/shifting no matter what hall you are on. She stated "then I'm leaving!" I told her if you leave you are done, you will no longer be employed here. LPN said then I'm leaving.

A copy of this warning was personally delivered to the above employee by:

_[signature]_ RN DON
Supervisor
17 May 02
Date

17 May 02

I have received and read this warning notice. I have been informed that a copy of this notice will be placed in my personnel file.

_[signature]_
Employee

Date

FORMS-67